
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–505

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY AND METLIFE TOWER RESOURCES GROUP<br><br>APPELLANTS<br><br>V.<br><br><br>B.J.L.Y., LLC<br>APPELLEE | Opinion Delivered April 13, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. CV2015-104]<br><br>HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>REVERSED |

## RAYMOND R. ABRAMSON, Judge

Metropolitan Insurance Co. ("Metropolitan") and MetLife Tower Resources Group, Inc. ("MetLife"), appeal the Pulaski County Circuit Court's order approving the petition of B.J.L.Y., LLC ("BJLY"), for the transfer of periodic payments from a structured settlement agreement. On appeal, Metropolitan and MetLife argue that the circuit court erred in approving the transfer because (1) the transfer violates the Arkansas Structured Settlement Protection Act's ("ASSPA") prohibition on dividing periodic payments between a payee and a transferee; (2) the settlement agreement contained an anti-assignment provision; and (3) the transfer is not in the best interest of the payee, Lisa Broadaway. We reverse.

The structured settlement agreement arose out of the resolution–and–settlement action from the United States District Court for the Eastern District of Texas for the wrongful death of David Broadaway. The agreement provided that Liberty Mutual Insurance Group was to

pay MetLife a sum of money to fund periodic payments to David's daughter, Lisa, through the purchase of an annuity from Metropolitan. The periodic payments included lump sum payments of $12,000 on July 29, 2016, and $20,000 on July 29, 2021, and monthly payments of $1,378, increasing at a 3% compound annual rate, commencing July 29, 2021, and ending June 29, 2051. The settlement additionally provided that the "[c]laimants acknowledge that the [p]eriodic [p]ayments cannot be accelerated, deferred, increased or decreased by the [c]laimants; nor shall the [c]laimants have the power to sell, mortgage, encumber, or anticipate the [p]eriodic [p]ayments, or any part thereof, by assignment or otherwise." The agreement is signed by Suzanne Howlett, as mother and court-appointed guardian of Lisa. The agreement was filed with the district court on October 8, 2006.

On January 3, 2014, the Craighead County Circuit Court entered an order approving a transfer of Lisa's payment rights to J.G. Wentworth Originations, LLC ("Wentworth"), for $9,500. The approved transfer included the lump sums due in 2016 and 2021.

On December 26, 2014, Lisa entered into a second contract with Wentworth for a transfer of a portion of the $1,378 monthly payments. Specifically, Lisa agreed to sell Wentworth 120 monthly payments of $300 each, increasing at 3% annually, beginning July 29, 2021, and ending on June 29, 2031, for $11,000. On December 29, 2014, Wentworth subsequently assigned its rights and liabilities under the contract to BJLY.

On January 12, 2015, BJLY filed a petition in the Pulaski County Circuit Court to approve the transfer of the periodic payments. BJLY notified Metropolitan and MetLife of the

SLIP OPINION

petition. On February 12, 2015, Metropolitan and MetLife jointly filed an objection to the petition.

On March 3, 2015, the circuit court held a hearing on BJLY's petition. Metropolitan and MetLife appeared at the hearing and objected to the transfer. Lisa testified that she wanted to use the proceeds from the sale of the periodic payments to help support three children that she and her wife planned to adopt from foster care. She explained that she and her wife could afford the children's daily expenses but that they needed the money from the periodic payments for the initial costs such as furniture, clothing, and school supplies. Lisa stated that she had not attempted to obtain a loan to fund the adoption because she did not want the debt. She also testified that she understood that she would be receiving less money than she was otherwise entitled. When counsel for Metropolitan and MetLife asked Lisa if she knew how much money she would be giving up, Lisa responded that she had not done the math. Counsel then informed her that she would be giving up $41,000.

Thereafter, on March 9, 2016, the circuit court entered an order approving BJLY's petition. The order states:

9. The transfer of the annuity payment . . . 120 monthly payments of $300 each, increasing at 3% annually, beginning on July 29, 2012 and ending on June 29, 2031 . . . as mentioned in [p]etitioner's [p]etition is hereby approved.

10. Metropolitan Tower Life Insurance Company a/k/a MetLife Tower Resources Group, Inc., and Metropolitan Life Insurance Company are hereby directed and authorized to deliver and to make payable to B.J.L.Y., LLC, and its successors and/or assigns the [t]ransferred [p]ayment(s) . . .

11. By making and delivering the [t]ransferred [p]ayment(s) mentioned herein to B.J.L.Y., LLC, and its successors and/or assigns as set forth in the preceding paragraph, Metropolitan Tower Life Insurance Company a/k/a MetLife Tower Resources

Group, Inc. and Metropolitan Life Insurance Company will be discharged from all liability for the [t]ransferred [p]ayment(s) due [to] L. Broadaway.

12. B.J.L.Y., LLC, . . . shall defend, indemnify and hold harmless Metropolitan Tower Life Insurance Company a/k/a MetLife Tower Resources Group, Inc. and Metropolitan Life Insurance Company . . . from and against any and all liability from all claims in connection with, related to, or in any way arising out of the issuance of the [t]ransferred [p]ayment(s) to B.J.L.Y., LLC, whether such claims are brought by L. Broadaway . . . , by any individual or entity to which B.J.L.Y., LLC, subsequently assigns or transfer the [t]ransferred [p]ayment(s) or any portion thereof, or by any other individual or entity.

. . . .

15. The [s]tructured [s]ettlement [o]bligor and [a]nnuity [i]ssuer shall irrevocably change the beneficiary for the [t]ransferred [p]ayment(s) to the [t]ransferee.

Metropolitan and MetLife timely appealed the circuit court's order to this court, asserting that the circuit court erred in approving the transfer.

Before we address Metropolitan and MetLife's points on appeal, we must first address BJLY's assertion that Metropolitan and MetLife do not have standing to appeal the March 9, 2016 order because they are not parties to the case. We find no merit in BJLY's argument. Subsection 706(b) of the ASSPA provides that

the transferee of a structured settlement agreement shall file with the court . . . and serve on all interested parties a notice of the proposed transfer and the application for its authorization, including . . . notification that any interested party is entitled to support, oppose, or otherwise respond to the transferee's application.

Ark. Code Ann. § 23-81-706(b) (Repl. 2014). The ASSPA defines interested parties as the annuity insurer and the structured settlement obligor. Ark. Code Ann. § 23-81-702(6). The structured settlement agreement in this case provided that Liberty Mutual Insurance Group pay MetLife a sum of money to fund periodic payments through the purchase of an annuity from Metropolitan. Since Metropolitan and MetLife are clearly interested parties under the

4

SLIP OPINION

statute, we hold that they have standing to appeal the order. We now address their arguments on appeal.

Metropolitan and MetLife first argue that the court erred in approving the transfer because it violates the ASSPA's prohibition on dividing periodic payments between a payee of a structured settlement agreement and a transferee of periodic payments. Specifically, the ASSPA provides as follows:

> No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order . . . based on express findings by the court . . . that:
> (1) The transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents;
> (2) The payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing; and
> (3) The transfer does not contravene any applicable statute or the order of any court or other government authority.

Ark. Code Ann. § 23-81-704. The ASSPA also states that "neither the annuity issuer nor the structured settlement obligor may be required to divide any periodic payment between the payee and any transferee or assignee or between two (2) or more transferees or assignees." Ark. Code Ann. § 23-81-705(3).

This court reviews issues of statutory interpretation de novo. *Steele v. Lyon*, 2015 Ark. App. 251, 460 S.W.3d 827. In reviewing issues of statutory interpretation, a court will determine the meaning and effect of a statute first by construing the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the statute's language is clear and unambiguous, there is no need to look further and apply the

5

rules of statutory construction. *Id.*

As both parties point out in their briefs, no Arkansas appellate court has applied subsection 705(3) of the ASSPA. However, we find that the statute's language clearly and unambiguously prohibits the payment structure ordered in this case. The statute prohibits the division of payments between a payee and a transferee. Yet, the approved transfer here required Metropolitan and MetLife to divide the periodic payments between Lisa and BJLY. Accordingly, the court's order violates subsection 705(3).

In its response, BJLY asserts that the court's order does not require Metropolitan and MetLife to split the periodic payments because the order directs them to pay the entire sum to BJLY and instructs BJLY to distribute Lisa's share. However, BJLY misconstrues the circuit court order. The order states that "the transfer of the annuity payment . . . 120 monthly payments of $300 each, increasing at 3% annually, beginning on July 29, 2021 and ending on June 29, 2031 . . . as mentioned in [p]etitioner's [p]etition is hereby approved." The order then directs Metropolitan and MetLife to deliver "the [t]ransferred [p]ayment(s)" to BJLY and to "irrecoverably change the beneficiary for the [t]ransferred [p]ayment(s)" to BJLY. The court-approved monthly transferred payments are $300, *but the monthly periodic payments are $1,378.* In other words, the order required Metropolitan and MetLife to divide the payments in violation of subsection 705(3). Because we conclude that the order violates subsection 705(3), we need not consider whether the structured settlement agreement contained a valid anti-assignment provision or whether the assignment was in Lisa's best interest.[1]

---

[1] The parties dispute whether this court should apply both the ASSPA and the Texas Structure Settlement Protection Act ("TSSPA") to this case because the structured settlement



Reversed.

GRUBER and VAUGHT, JJ., agree.

*Drinker Biddle & Reath LLP*, by: *Andrew J. Lorin*, pro hac vice; and *Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*, for appellants.

*Steel, Wright & Collier*, by: *Scott Poynter*, for appellee.

---

agreement provides that the agreement "shall be construed and interpreted in accordance with the laws of the State of Texas." However, because there is no conflict of law, this court need not decide whether both Acts apply. *See In re Rains*, 473 S.W.3d 461 (Tex. App. Amarillo 2015) (reversing a lower court's approval of a transfer of periodic payments under a structured- settlement agreement because the transfer violated the TSSPA's prohibition on dividing payments and the transfer was not in the best interest of the payee); *Bettis v. Bettis*, 96 Ark. App. 101, 239 S.W.3d 5 (2006) (applying only Arkansas law when the laws of Arkansas and Georgia were substantially the same).