Clare C. MARTIN, Trustee of the Clare C. Martin Trust UTA
Dated 11-13-98 and Jack L. Martin, Trustee of the Jack L. Martin
Trust UTA Dated 11-13-98 *v.* David L. SHEW and Hilary Ann
Bishop Shew and Ben Melling and Susan Enna Melling

CA 05-1314                                            237 S.W.3d 497

Court of Appeals of Arkansas
Opinion delivered June 28, 2006

*Carney Law Firm, P.A.*, by: *Mark Carney*; *John A. Crain*, for appellants.

*Johnson, Sanders & Morgan*, by: *Ted H. Sanders*, for appellees.

LARRY D. VAUGHT, Judge. Appellants Clare Martin, as trustee of the Clare Martin Trust, and Jack Martin, as trustee of the Jack Martin Trust, brought suit seeking a declaratory judgment to determine the validity of certain amendments to restrictive covenants that were adopted by vote of appellees David Shew, Hillary Shew, Ben Melling, and Susan Melling, owners of two-thirds of the property affected by the covenants. The trial court found that the modified restrictions were valid and enforceable. Appellants raise five points for reversal. We affirm.

The facts are largely undisputed. In March 1999, MMI, Inc., owned a 54.32-acre piece of property and decided to subdivide the property into a subdivision named "Oak Valley Estates." The property was divided into five ten-acre tracts with metes-and-bounds descriptions. The survey of the subdivision was recorded. Protective covenants and restrictions were adopted but not filed of record for Oak Valley Estates. The covenants covered topics such as the size of residences to be built, set-back lines, and whether mobile or manufactured homes would be allowed. The covenants also provided for amendments to the scheme if approved by two-thirds of the property owners.

In March 2001, MMI revised the survey of Oak Valley Estates whereby Tract 4 was divided between Tract 3 with a combined total acreage of 16.9 acres and Tract 5 with a combined total of 16.41 acres. On June 15, 2001, MMI revised the restrictive covenants for Oak Valley Estates by allowing Tract 3 to be subdivided into two eight-acre tracts and Tract 5 to be subdivided into three five-acre tracts. The amended covenants were otherwise unchanged. In July 2001, MMI filed a survey showing Tract 5

divided into three tracts of land — Tract X, Tract XX, and Tract XXX — and provided for a sixty-foot road and utility easement along the eastern boundary of Tract 5. The survey is shown as approved by the Baxter County Planning Board and signed by Boyce Drake, chairman of the planning board.

MMI made the first conveyance when Tract 2 was sold on June 29, 2001. Tract 2 was ultimately conveyed to the Shews on August 15, 2002. Tract 3, as modified by the 2001 amendment, was conveyed to the Shews on August 3, 2001. The Mellings purchased Tract 1 on November 9, 2001. In August 2002, MMI conveyed Tract 5 to appellants by a "correction" deed containing a metes-and-bounds description of Tract 5 and referencing the original 1999 survey. In March 2003, appellees, who constituted the owners of more than two-thirds of the property, amended the covenants to prevent any further subdivision of the tracts.

On October 2, 2003, appellants filed this action for declaratory judgment as to the validity of the March 2003 amendments to the restrictive covenants. Appellants alleged that the 2003 amendments were ineffective because Tract 5 had already been divided. Appellees answered and denied that appellants had the ability, after the 2003 amendments to the restrictive covenants, to divide Tract 5 into three separate lots. At the hearing, the court heard the arguments of counsel as to the effect of each document at issue, but no testimony was presented.

The trial court issued an order in which it found that the original protective covenants and restrictions were ineffective because they had not been filed of record as required by law. The amended covenants filed of record on June 15, 2001, were found to place appellees on notice that Tract 5 was subject to being divided into three parcels. The court concluded, however, that appellants did not divide Tract 5 into three parcels prior to appellees' filing the amended covenants prohibiting the further division of Tract 5 because there was no sale of the subdivided Tract 5 that made reference to the July 2001 survey showing the division into three lots. A timely notice of appeal followed.

Appellants raise five points for reversal. However, the case essentially turns on one issue: whether there was a division of Tract 5 prior to appellees filing the restrictions to prevent further division in March 2003. All of appellants' arguments concern various factors to be considered in answering that single question.

In bench trials, the standard of review on appeal is whether the trial court's findings were clearly erroneous. *Schueck v. Burris,*

330 Ark. 780, 957 S.W.2d 702 (1997). At issue in this case is interpretation of a protective or restrictive covenant on the use of land. Restrictions upon the use of land are not favored in the law. *Forrest Constr. Co., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001); *Faust v. Little Rock Sch. Dist.*, 224 Ark. 761, 276 S.W.2d 59 (1955). Further, a restrictive covenant will be strictly construed against limitations on the free use of land. *Forrest*, 345 Ark. at 9, 43 S.W.3d at 145; *Casebeer v. Beacon Realty, Inc.*, 248 Ark. 22, 449 S.W.2d 701 (1970). All doubts are resolved in favor of the unfettered use of land. *Forrest*, 345 Ark. at 9, 43 S.W.3d at 145; *Casebeer*, 248. Ark. at 25, 449 S.W.2d at 703.

Any restriction on the use of land must be clearly apparent in the language of the asserted covenant. *Forrest*, 345 Ark. at 9, 43 S.W.3d at 145; *Harbour v. Northwest Land Co., Inc.*, 284 Ark. 286, 681 S.W.2d 384 (1984). Where the language of the restrictive covenant is clear and unambiguous, application of the restriction will be governed by our general rules of interpretation; that is, the intent of the parties governs as disclosed by the plain language of the restriction. *Forrest*, 345 Ark. at 9, 43 S.W.3d at 145; *Clifford Family Ltd. Liab. Co. v. Cox*, 334 Ark. 64, 971 S.W.2d 769 (1998) (quoting *Barber v. Watson*, 330 Ark. 250, 953 S.W.2d 579 (1997)).

Under the facts of this case, we conclude that the trial court did not err in finding that there was no division of Tract 5 prior to the amendment to the restrictive covenants prohibiting further division of Tract 5. There is no dispute that, under the June 15, 2001, amendments to the restrictive covenants, MMI had the right to divide Tract 5 into three smaller tracts. It is also clear that MMI took steps toward dividing Tract 5 prior to any conveyances. It had a survey done showing Tract 5 divided into three smaller tracts and had it approved by the planning commission and recorded. However, approval of the plat by the planning commission did nothing more than entitle MMI to place the survey of record. *Rickman v. Mobbs*, 253 Ark. 969, 490 S.W.2d 129 (1973). Without a sale being made with reference to the revised July 2001 plat, Tract 5 remained undivided, and appellants owned the entire tract. *See City of Sherwood v. Cook*, 315 Ark. 115, 865 S.W.2d 293 (1993).

Appellants argue that the recording of the July 2001 survey was a division of Tract 5 pursuant to Ark. Code Ann. § 14-18-101(a) (Repl. 1998), which provides that "owners of land lying beyond the confines of municipal corporations, which have

not theretofore been subdivided as additions or subdivisions of any city or town, may have their lands surveyed and divided into numbered plots by a competent surveyor, who shall make a plat thereof." However, the trial court found that, because the 2002 conveyance from MMI to appellants did not convey the property encompassing Tract 5 by reference to the July 2001 survey, the division was never effective. This finding is not clearly erroneous and is supported by Ark. Code Ann. § 14-18-102, which makes the legal description for property platted pursuant to section 14-18-101 the legal description to be used in all instruments relating to the land. The 2002 conveyance only referred to a metes-and-bounds description of Tract 5 (and one-half of Tract 4) from the 1999 survey.

■ After the conveyance in 2002, appellants took no further action to divide Tract 5 into three smaller tracts. They could have replatted Tract 5 prior to the 2003 amendments. *Compare Ingram v. Wirt*, 314 Ark. 553, 864 S.W.2d 237 (1993). They were also on notice that the restrictive covenants could be amended by the requisite number of landowners and are, therefore, bound by such later amendments. *See Clifford Family Ltd. Liab. Co.*, 334 Ark. 64, 971 S.W.2d 769. Because there was no effective division of Tract 5 after the conveyance to appellants, the circuit court was not clearly erroneous in declaring that the amendments to the restrictive covenants adopted by appellees were valid and enforceable.

Affirmed.

GLADWIN, GRIFFEN, and NEAL, JJ., agree.

ROAF, J., concurs.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. I respectfully dissent because I believe that my learned colleagues have failed to apprehend that the appellants are correct when they argue that the proper resolution of this case lies within the plain wording of Arkansas Code Annotated section 14-18-101 (Repl. 1998). The July 2001 survey, which was duly certified and filed for record, divided Tract 5 before the restrictive covenants were amended to prohibit it. The trial court — and the majority — are simply wrong when they conclude that the deed that conveyed the new parcel encompassing

Tract 5 and half of Tract 4, without reference to the July 2001 survey, had any effect on the new subdivision. It has been the law in Arkansas for more than sixty years that returning platted land to acreage requires the action of the County Court in which the land lies. Ark. Code Ann. § 14-18-110 (Repl. 1998).

The majority's reliance on Arkansas Code Annotated section 14-18-102 (Repl. 1998) as support for the proposition that the deed between MMI and the appellants is curious, at best. It could perhaps support the proposition that the deed, which does not reference the July 2001 survey, was deficient. It is quite a leap — or lapse — in logic to conclude that a faulty property description in a deed could annul the actions of the Baxter County Planning Board and relieve the County Court of its responsibilities under section 14-18-110.

The majority also errs when it cites *City of Sherwood v. Cook*, 315 Ark. 115, 865 S.W.2d 293 (1993), as authority for the proposition that the appellants were somehow required to make a "sale" with reference to the 2001 plat in order to divide Tract 5. I would think that the name of the appellant, "City of Sherwood" is the first clue that this venerable authority was inapposite for a case involving property that lay outside the incorporated territory of a city or town. *See* Ark. Code Ann. § 14-18-110. Even if *Cook* involved the same statutory scheme as the case at bar, it involves an entirely different situation. As our supreme court notes, the disputed property in *Cook* "has never been described or platted in the Bills of Assurances and plats for the Trammel Addition. Furthermore, the six acres has been described by metes and bounds in every instrument of conveyance introduced at the trial." 315 Ark. at 117, 865 S.W.2d at 294. The key point here is that the appellees in *Cook* never made the plat or filed it for record; whereas, the appellants in the instant case clearly did. Moreover, and more importantly, *Cook* does not authorize the majority to insert into the statutory scheme, codified as Arkansas Code Annotated section 14-18-101 and following, a requirement that a party make a sale with reference to a plat in order to make subdivision of his property effective. I decline to follow the majority in its unauthorized and ill-advised invasion of the province of the legislature.

Therefore, I respectfully dissent.